UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ALLSTATE CONSTRUCTION, INC., d/b/a ALLSTATE CONSTRUCTION ROOFING, INC as assignee of VINA CLEANERS LLC.

CIVIL ACTION

VERSUS

OHIO SECURITY INSURANCE COMPANY

NO. 23-01295-BAJ-SDJ

## RULING AND ORDER

Before the Court is Defendant Ohio Security Insurance Company's **Motion To Dismiss Plaintiff's Statutory Bad Faith Claims As Alleged in Plaintiff's Complaint (Doc. 11)**. In this action, Plaintiff Allstate Construction Inc., d/b/a Allstate Construction Roofing, Inc. LLC (Allstate), seeks to recover insurance proceeds allegedly due under a commercial policy issued by Defendant Ohio Security Insurance Company (Ohio Security) (Doc. 1-2). Plaintiff pursues statutory claims for breach of the Defendant's insurance policy (Policy) and bad faith breach under La. R.S. §§ 22:1892 and 22:1973. (*Id.* at ¶¶ 49-59). To overcome the obvious problem that it is *not* the named insured under the Defendant's Policy, Plaintiff alleges that "Vina Cleaners LLC assigned any and all assignable rights, [and] benefits, under the [the] Policy to. . . [Allstate]." (*Id.* at ¶10). A copy of the purported assignment agreement is appended to Defendant's Motion. (Doc. 13 at 2).

I.  FACTS

On or around August 29, 2021, Hurricane Ida made landfall in Baton Rouge, Louisiana, substantially damaging Vina Cleaners LLC's (Vina Cleaners) property.

(Doc. 1-2 at ¶8). Vina Cleaners is the named insured under the Policy. After Hurricane Ida, Vina Cleaners assigned its rights and benefits to Plaintiff, who served as a contractor engaged in construction services to repair Vina's facility. (Doc. 1-2 at ¶¶1, 6). "Vina Cleaners owned, operated and insured a laundry and dry-cleaning business . . . located at . . . 4626 Plank Road, Baton Rouge, LA 70705." (*Id.* at ¶ 2). It alleges that it timely reported the loss to the Defendant and requested coverage under the Policy. (*Id.* at ¶9). The Policy was in effect from July 2, 2021 to July 2, 2022. (*Id.* at ¶5). The Policy covered the property "against perils including hurricanes and windstorm or hail policy deductible." (*Id.*). Additionally, Vina Cleaners "[paid] additional premiums for additional Replacement Cost Value (RCV) protection for building coverage." (*Id*).

Plaintiff alleges that "[o]n or around September 14, 2021, Defendant's field adjuster inspected the damages sustained to [the] [p]roperty and prepared reports regarding the same. [However], [t]he reports were not provided to Plaintiff." (Doc. 1-2 at ¶12). Plaintiff contends that Defendant's inspections constituted acknowledgment of proof of loss because the Defendant was made aware of the damage sustained to Vina Cleaners' property by their adjuster. (*Id.* at ¶¶12-14). Nonetheless, "Defendant denied coverage for [that] claim." (*Id.* at ¶15). Plaintiff alleges that "Defendant admitted that their field adjuster observed interior water damage but claimed that they did not [observe] any storm damage to the roof or exterior of the building." (*Id.* at ¶16). Even further, "Defendant denied payment to Plaintiff's claim because the interior damages [were] not covered unless the building

2

first sustained damage by covered loss to its roof or wall which rain enters." (*Id.* at ¶17). Plaintiff claims that Defendant's failure to tender a payment prohibited it from making meaningful repairs. (Doc. 8 at ¶19). On January 17, 2022, five months after Hurricane Ida, Vina Cleaners assigned its rights to Plaintiff. (Doc. 11-1 at 3).

On February 22, 2022, five months after its first submission of its proof of loss to Defendant, Plaintiff submitted a partial proof of loss and demand for payment in the amount of $87,633.55 accompanied by its estimate, which detailed the value of the loss sustained. (Doc. 1-2 at ¶21). Another five months later, in a "letter dated July 12, 2022, Defendant acknowledged receipt of Plaintiff's demand letter and estimate of damages and advised [Plaintiff that] it was investigating the loss under a reservation of rights." (*Id.* at 24). On September 1, 2022, Defendant estimated that the damages to Plaintiff's property attributable to Hurricane Ida amounted to $2,889.54. Defendant refused to tender payment for the balance of the claim. (*Id.* at ¶¶25-27). Instead, "Defendant issued a payment of $389.54 based on their [sic] estimate of the $2,889.54, minus the $2500 Policy deductible." (*Id.* at ¶28). Defendant attempted to justify its fractional tender by alleging that the damage sustained to the roof was a result of "long term damage and wear and tear," rather than Hurricane Ida. (*Id.* at ¶27).

The following day, in a letter dated September 2, 2022, Plaintiff asserts that "Defendant admitted that the loss was partially covered, specifically the metal roof panels...that were damaged as a result of tree branch impact." (Doc. 1-2 at ¶26). Plaintiff points to Defendant's failures to pay as acts of bad faith which justify the

3

statutory penalties under La. R.S. §§ 22:1892 and 22:1973. (*Id.* at ¶33).

## II. PROCEDURAL BACKGROUND

On August 8, 2023, Plaintiff initiated this action in the 19th Judicial District Court for the Parish of East Baton Rouge. Defendant timely removed it to this Court. (Doc. 1). Defendant now moves to dismiss Plaintiff's action, arguing: (1) in the absence of clear and unambiguous language, any rights that Vina Cleaners assigned to Plaintiff did not include the right to pursue bad faith penalties; and (2) that Vina Cleaners could not assign a right under La. R.S. § 22:1892 or La. R.S. § 22:1973 because such a claim had not accrued at the time of the assignment.

## III. LAW AND ANALYSIS

### A. Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal citations omitted).

### A. Discussion

The Court addresses the Defendant's arguments in the order that they appear in the Motion.

> i. **Whether the assignment of rights unambiguously included bad faith failure-to-settle claims under La. R.S. § 22:1973 or La. R.S. § 22:1892.**

Under Louisiana law, it is well-settled that a bad faith failure-to-settle claim arises *not* from the contract of insurance itself but rather from an insurer's violation of its statutory duties under La. R.S. § 22:1973. *See Johno v. Doe*, 2015-0737 (La. App. 4 Cir. (3/9/16), 187 So. 3d 581, 584, *writ denied*, 2016-0777 (La. 6/17/16), 192 So. 3d 7690. *E.g., id.* at *8 (where the Court held that the absence of an explicit assignment of a bad faith failure-to-settle claim should be construed as an ambiguity in the release). Defendant argues that the contract between Vina and Plaintiff failed to provide an explicit assignment of rights for bad faith failure-to-settle claims pursuant to La. R.S. §§ 22:1973(A) or 22:1892. (Doc. 11).

La. R.S. § 22:1973 provides that an insurer owes his insured a duty of good faith and fair dealing. Specifically, the statutes states, in relevant part, that:

> A.   An insurer, included but not limited to a foreign line and surplus

5

line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B.   Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

. . .

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
(6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.

Applicable here, La. R.S. § 22:1892 provides a timeframe when payment should be made after receipt of satisfactory proofs of loss. It reads in relevant part:

All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.

La. R.S. § 22:1892.

The assignment of benefits executed in Plaintiff's favor reads as follows:

The undersigned is the Assignor/Owner/Agent for the Property listed below and has/have certain rights to insurance contracts and policies on the Property (hereinafter "Assignor"). Assignor hereby assigns any and all insurance rights, benefits, interests, proceeds, and any causes of action under any applicable insurance policies to Allstate Construction Inc. (hereinafter "Assignee" and/or "Company") for services rendered or to be rendered by the Company. By executing this Agreement, Assignor intends for all rights, benefits, and proceeds for services rendered by the Company for the repair, restoration, and mitigation against future damage to the Property.

6

(Doc. 11-1 at 9).

In its complaint and supporting pleadings, Plaintiff argues "[that it] intended, believed, and understood the [Assignment of Benefits] to include all insurance rights and claims, including claims for indemnity under the Policy and claims for extracontractual, bad faith and statutory rights pursuant to La. R.S. §§ 22:1892 and 22:1973." (Doc. 8 at ¶11). Furthermore, Plaintiff asserts to the extent the Court may find ambiguity within the assignment of benefits, parol evidence should be considered because the language of "any and all assignable rights, benefits, interests, and proceeds, any causes of action under any applicable insurance policies ... includes all extracontractual, bad faith and statutory rights pursuant to La. R.S. 22:1892 or La. R.S. 22:1973." (Doc. 15 at 4, 5). Moreover, Plaintiff argues "[w]hat else could the parties have intended when they said, 'any and all insurance rights...and any causes of action?'" (Doc 15. at 5).

Rather than speculate on the parties' intent at the time of assignment, the question plainly before the Court is whether the assignment of rights *explicitly* contained language pertaining to the bad faith penalty statutes. Because Defendant attached a copy of the assignment clause to its pleadings, the Court will consider the assignment in further detail below. (*See* p. 1); (*See also* Doc. 11-1 at 9).

Here, the Court does not find any ambiguity in the assignment of rights contract because the contract is silent to any claims regarding bad faith failure-to-settle. The Louisiana Court of Appeal for the Second Circuit squarely addressed this issue in *Johno v. Doe*, 2015-0737 (La. App. 4 Cir. (3/9/16), 187 So. 3d 581, 585, *writ*

7

*denied*, 2016-0777 (La. 6/17/16), 192 So. 3d 7690.

As that court noted, "[A] bad-faith failure-to-settle claim arises *not* from the contract of insurance itself but rather the statutory duties under La. R.S. 22:1973." (emphasis in the original). *See id* (where the court found that "[it] cannot assume that the absence of an explicit assignment of its bad-faith failure-to-settle claim by Duplessis should be construed as ambiguity in the Release."). The court came to its finding by distinguishing Johno's contractual claims from the insured's statutory duties. *See id*. The Court of Appeal explained that it "[did not] detect [any] provision in the plain words of the assignment of rights which purport[ed] to assign the statutory (as opposed to contractual) claim." *Id. See also id* (quoting *Durio v. Horace Mann Ins*. Co., 11-0084, p.18 (La.10/25/11),74 So.3d 1159, 1170)) (explaining that "The duties of an insurer under the **statute** 'are separate and distinct from its duties under the insurance contract.'") (emphasis in the original). This Court has arrived at the same conclusion. Thus, an assignment of rights provision does not unambiguously include bad faith claims pursuant to La. R.S. § 22:1892 or La. R.S. § 22:1973 (A).

Moreover, it is well-settled that any language indicating relief under the bad-faith statutes must be *explicitly* expressed. *See Franks v. Liberty Pers. Ins. Co.*, No. 2:22-CV-2076, 2023 WL 2309819 at *2 (W.D. L.A. Mar. 1, 2023) (explaining in an action similar to this, that "[t]he Court [found] that any bad faith claims [were] not [a] part of the Assignment. The Assignment clearly assign[ed] only insurance proceeds, but [did] not expressly assign the bad faith claims, [because they were] extra-contractual."). "The term 'extracontractual damages' refers to damages not

justified under the terms of [a] contract, and necessarily including punitive damages." *See Fulton v. Mississippi Farm Bureau Cas. Ins. Co.*, 105 So. 3d 284 (Miss. 2012). *See also Richmond Printing LLC v. Dir. Fed. Emergency Mgmt. Agency*, 72 F. App'x 92, 96 (5th Cir. 2003) (explaining that extracontractual claims are "such claims for attorney's fees, state law statutory penalties, and misrepresentation."). *See also Disaster Relief Servs. of N. Carolina, LLC v. Emps. Mut. Cas. Ins. Co.*, No. CIV. A. 07-1925, 2009 WL 935963 at *6 (W.D. La. Apr. 6, 2009) (where the court explained that "any assignment of rights action under La. R.S. 22:658 and 22:1220 must be expressly provided for in the act of assignment."). Thus, it is clear that the assignment of rights between Plaintiff and Vina Cleaners did not expressly include language pertaining to bad faith penalty statutes.

Plaintiff's argument for the use of parol evidence also fails. The Louisiana Court of Appeal for the Second Circuit instructs that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. The meaning and intent of the parties must be sought within the four corners of the document and cannot be explained or contradicted by parol evidence." *Tolar v. Tolar* 25,935 (La.App.2d Cir. 6/22/94), 639 So.2d 399, 401. Plaintiff cites two cases that are not related in any manner to bad faith failure-to-settle claims in an effort to support its argument for the use of parol evidence. *See Shreveport Great Empire Broad., Inc. v. Chicoine*, 528 So. 2d 633 (La. Ct. App. 1988) (where parol evidence was admitted to determine whether speaking engagements were properly included in a contract between a radio station and an

9

advertiser). *See also Bossier Orthopaedic Clinic v. Durham*, 32, 543 (La. App. 2 Cir. 12/15/99), 747 So. 2d 731 (where the use of parol evidence was permissible to "prove the intent that the balance of the debt would be paid in full by the firm with funds received from the insurance settlement."). However, these cases are inapposite here because they do not address the use of parol evidence when analyzing ambiguous assignments of rights claims pertaining to bad faith penalty statutes.

Thus, the Plaintiff and Vina Cleaners' failure to include an explicit assignment of rights clause under La. R.S. § 22:1892 or La. R.S. § 22:1973 does not justify consideration of parol evidence. Accordingly, Plaintiff has not satisfied the pleading standard sufficient to survive a Rule 12 (b)(6) Motion to Dismiss.

### ii. Whether Plaintiff's claims for bad faith existed at the time of the assignment of rights.

Defendant argues that "[e]ven if the assignment included an express assignment of bad faith (which Defendant still maintains that it does not), the insured [did not have any] bad faith claims to assign as a matter of law." (Doc. 11-1 at 4). Because the Court has determined that Vina did not explicitly assign any rights to recover under La. R.S. § 22:1892 or La. R.S. § 22:1973 to Plaintiff, the Court need not address Defendant's alternative argument.

Accordingly,

**IT IS ORDERED** that Defendant's Motion To Dismiss Plaintiff Allstate's bad faith claims under La. R.S. 22:1973 or 22:1892 be and is hereby **GRANTED**. Allstate's bad faith claims against Defendant are hereby **DISMISSED WITH**

PREJUDICE.

Judgment shall be entered separately.

Baton Rouge, Louisiana, this 13th day of August 2024

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**